**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROGER SOLANO, PH.D.,<br><br>Plaintiff,<br><br>vs.<br><br>SLIPPERY ROCK UNIVERSITY OF PENNSYLVANIA and HOLLY MCCOY,<br><br>Defendants. | ) | Civil Action No. 24-1542 |

**FIRST AMENDED COMPLAINT IN CIVIL ACTION**

AND NOW comes Plaintiff, Roger Solano, Ph.D. ("Dr. Solano" or "Plaintiff"), by and through undersigned counsel, and files this First Amended Complaint in Civil Action, stating as follows:

## I. PARTIES

1. Dr. Solano is an adult individual living in Allegheny County, Pennsylvania.

2. Defendant Slippery Rock University of Pennsylvania ("SRU") is a state-owned institution of higher education with its primary place of business at 1 Morrow Way, Slippery Rock, Pennsylvania 16057.

3. Defendant Holly McCoy ("Ms. McCoy") is an individual with her primary place of business at 1 Morrow Way, Slippery Rock, Pennsylvania 16057.

## II. JURISDICTION

4. The jurisdiction of this Court over the matters set forth in this Complaint is founded upon 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

## III. VENUE

5. The events related in this Complaint occurred in Butler County, Pennsylvania, in the

Western District of Pennsylvania; therefore, venue is appropriate in this Court.

## IV. ADMINISTRATIVE EXHAUSTION

6. Dr. Solano filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") in February 2024.

7. The aforementioned complaint was docketed at 533-2024-01080 and raised claims for retaliation and discrimination on the basis of sex, sexual orientation, national origin, and disability.

8. The aforementioned charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").

9. On August 20, 2024, the EEOC issued a "Right to Sue" notice and, therefore, Dr. Solano's federal claims are ripe for adjudication.

10. Per letter dated October 21, 2024, the PHRC indicated that it would be closing out its investigation into Dr. Solano's complaint and, therefore, his claims under Pennsylvania law are ripe for adjudication.

11. On or about October 18, 2024, Dr. Solano filed a second EEOC charge alleging sex, sexual orientation, national origin, and disability discrimination, retaliation, and hostile work environment.

12. The aforementioned charge was docketed by the EEOC at 533-2025-00283.

13. Dr. Solano cross-filed this recent administrative complaint with the PHRC.

14. When the claims arising from the most recent administrative complaint have been exhausted Dr. Solano will seek leave to file an amended complaint that embraces those claims.

## V. FACTS

15. Dr. Solano is currently employed by SRU; during the time relevant to this Complaint he was the chair of the SRU Department of Management and Marketing ("Management and Marketing Department").

16. Ms. McCoy is currently the Director of Human Resources at SRU and, as such, has oversight over the internal grievance process.

17. Dr. Solano holds a Ph.D. in industrial engineering from the New Jersey Institute of Technology.

18. Dr. Solano, who was born in Venezuela, is Hispanic.

19. While fluent in English, Dr. Solano's native language is Spanish, and it takes him longer than others to respond to written queries in English.

20. Dr. Solano is also openly homosexual.

21. Since 2020 Dr. Solano has been treated for generalized anxiety disorder, attention deficit hyperactivity disorder, and insomnia, all of which were exacerbated by his treatment at SRU.

22. Dr. Solano has worked at SRU since 2009, and he has served as chair of the Management and Marketing Department since May 2019.

23. At SRU, department chairs have the following duties in addition to their teaching regarding the:

a) direction the activities of the department;

b) development of department plans, guidelines and internal office operation;

c) direction of the department's administrative organization;

d) representation of the department's academic discipline(s) both on and off

University property; and

e) recommendations related to such matters as personnel actions, curricular changes, course offerings, teaching assignments and the department budget.

24. In addition, department chairs are expected to work during summer and be on-campus during part of the summer.

25. On account of these additional responsibilities department chairs receive pay bonuses proportional to the size of their department.

26. Dr. Solano has been the target of a campaign of hostility and harassment perpetuated and enabled by SRU administration.

27. One key element of this campaign has been harassment from Jeananne Nicholls ("Dr. Nicholls").

28. Since 2011, Dr. Nicholls has taught in the Management and Marketing Department.

29. Dr. Solano was a candidate to serve as chair of the Management and Marketing Department, and he was elected chair in part because the faculty favored his strategic vision for the Department.

30. Even though he was chair, Dr. Solano became the target of hostility emanating from Dr. Nicholls.

31. As a voting member of the Department Dr. Nicholls has input over hiring decisions within the Management and Marketing Department, and as such holds significant influence over departmental personnel and staffing decisions.

32. In addition, Dr. Nicholls has cultivated close relationships with many senior administrators at SRU.

33. Dr. Nicholls is believed to be a white, non-Hispanic, non-disabled, heterosexual female.

34. Dr. Nicholls was the chair of the Departmental Promotion Committee (2023-24) and was a member and the former chair of the University Promotion Committee.

35. Dr. Nicholls has also been a member of SRU's APSCUF Executive Committee since 2018.

36. Since Dr. Solano became chair in 2019, Dr. Nicholls has criticized nearly every decision made by Dr. Solano, including decisions related to menial and trivial matters.

37. Other faculty and administrators at SRU noticed the strained relationship between Dr. Solano and Dr. Nicholls.

38. Even though the strained relationship between Dr. Solano and Dr. Nicholls would ultimately give rise to a hostile work environment, SRU administrators failed to take any steps to ease the mounting tensions within the Management and Marketing Department.

39. In the first 15 weeks after Dr. Solano was elected as department chair, Dr. Nicholls filed no fewer than 14 complaints against him.

40. Many of Dr. Nicholls's complaints alluded to his race/national origin.

41. For example, during the end of a November 2019 meeting, Dr. Nicholls complained about the wording of an email sent by Dr. Solano–thereby alluding to his capacity with the English language–and complaining about the lack of honesty or transparency within the Department.

42. Dr. Solano raised complaints with the SRU Human Resources Department that Dr. Nicholls's behavior was adversely affecting both him and the Department as a whole.

43. For example, in 2022, Dr. Nicholls challenged Dr. Solano's decision to allow one of

his advisees to enroll in a particular course section; this decision did not involve Dr. Nicholls and there was no reason for her to criticize Dr. Solano's decision.

44. In another instance, Dr. Nicholls accused Dr. Solano of blocking a curriculum change.

45. This accusation was spurious and false: Dr. Solano did not even attend the faculty meeting during which the curricular change was discussed.

46. In yet another instance, Dr. Nicholls complained that Dr. Solano did not appoint her to the Faculty Mentoring Committee, even though she did not want to serve on that committee.

47. Dr. Nicholls has enlisted the SRU administration in her ongoing campaign against Dr. Solano.

48. Dr. Nicholls did not express similar criticism of Dr. Solano's predecessors as department chair, who were all non-Hispanic and were heterosexual.

49. Dr. Nicholls has also not expressed similar criticism of her current department chair who is non-Hispanic and heterosexual.

50. Dr. Nicholls routinely would send long, rambling emails to Dr. Solano challenging even his most mundane decisions and raising frivolous challenges with the Dean of the SRU College of Business.

51. Dr. Solano attempted to respond to transactional emails with simple "yes or no" answers, but Dr. Nicholls demanded that he provide her with in depth explanations for his decisions.

52. As chair, Dr. Solano is required to make numerous decisions regarding the Department, and he is under no obligation to provide a detailed rationale to any faculty member upon demand.

53. At no time was Dr. Solano ever counseled that he was mismanaging the Department or doing anything wrong.

54. Dr. Nicholls's accusations against Dr. Solano veered into the bizarre: on one occasion she accused him of discriminating against a faculty member in another department.

55. Dr. Nicholls's accusations have not been supported by evidence.

56. SRU knew or should have known that these complaints were frivolous, harassing, and/or discriminatory yet were complicit in allowing them to persist.

57. To the contrary, SRU administrators actually appeared to be facilitating Dr. Nicholls's obnoxious, hostile, and harassing behavior.

58. Based upon information and belief, SRU administrators weaponized Dr. Nicholls's vendetta against Dr. Solano in order to marginalize him at SRU.

59. Dr. Solano's physicians noted the adverse effects that the negative treatment and scrutiny were having on his health.

60. In October 2022, Dr. Nicholls falsely filed an administrative complaint against SRU and Dr. Solano with the EEOC, which was a thinly veiled anti-gay attack.

61. Specifically, Dr. Nicholls scurrilously alleged that Dr. Solano gave preferential treatment to younger, male faculty with respect to scheduling, which was also a thinly veiled anti-gay attack.

62. As chair, Dr. Solano is responsible for course scheduling in the Management and Marketing Department.

63. After preparing an initial course schedule, Dr. Solano submits the initial schedule to the office of the Dean of the SRU School of Business for review and approval.

64. The ultimate approval of the course schedule lies with the University Provost.

65. The scheduling process prioritizes student needs over those of the faculty and requires communication between the department chair, Dr. Solano, and the Dean of the College of Business.

66. Even though the Dean and the University Provost have ultimate authority over the scheduling process, no SRU administrator invoked this authority so as to limit the ongoing campaign against Dr. Solano.

67. Dr. Nicholls's complaints were baseless, and the EEOC closed out its investigation by issuing a "Right to Sue" notice.

68. Dr. Nicholls also filed internal complaints and grievances against Dr. Solano; these also were dismissed as unfounded.

69. Dr. Nicholls even questioned an error made on a travel reimbursement by Dr. Solano's secretary.

70. Dr. Solano and his secretary were in the process of investigating this discrepancy when Dr. Solano had a medical emergency that necessitated surgery while his secretary's mother passed away.

71. The aforementioned investigation was completed by another SRU administrator who found that Dr. Solano did not commit any malfeasance; nevertheless, this explanation did not satisfy Dr. Nicholls nor end her efforts to persecute Dr. Solano.

72. Many of Dr. Nicholls's complaints were based on falsehood and exaggeration; for instance, she overstated the number of students enrolled in her classes.

73. During his time as department chair no faculty member other than Dr. Nicholls has

made any complaints against Dr. Solano.

74. Dr. Nicholls indicated publically that she does not trust Dr. Solano.

75. Dr. Nicholls circulated spurious rumors that Dr. Solano made inappropriate comments at work, including inappropriate comments about women.

76. Dr. Nicholls also has criticized Dr. Solano for not automatically acquiescing to her demands to be allowed to teach remotely.

77. Dr. Nicholls's continued attacks on Dr. Solano have made him the target of enmity and attack from his colleagues at SRU.

78. SRU did nothing to address Dr. Solano's reputation loss or to sanction or control Dr. Nicholls.

79. On October 12, 2023, Ms. McCoy wrote to Dr. Solano and informed him that the investigation into Dr. Nicholls's most recent complaint had been concluded with a finding that Dr. Solano did not violate SRU's Harassment and Discrimination Policy.

80. The constant scrutiny placed on Dr. Solano by Dr. Nicholls has had a negative impact on his health.

81. Dr. Solano has experienced multiple panic attacks, and he is being treated for anxiety and depression.

82. Dr. Solano has since been diagnosed with generalized anxiety disorder.

83. Dr. Solano's psychiatric condition has been exacerbated by the hostile treatment by Dr. Nicholls and her allies in the faculty and in the SRU administration.

84. Dr. Nicholls's constant barrage of criticism and complaints towards Dr. Solano has created a hostile work environment which SRU has enabled and fostered.

85. The hostile work environment is ongoing.

86. Dr. Nicholls's criticism has been reserved to Dr. Solano, and she has not similarly scrutinized prior departmental chairs who were heterosexual, non-Hispanic, and/or non-disabled.

87. Dr. Solano had complained about Dr. Nicholls's behavior to SRU administrators, but the University administration took no steps to end the barrage of hostility.

88. To the contrary, SRU administrators condoned Dr. Nicholls's campaign of harassment against Dr. Solano.

89. Even though Dr. Nicholls's complaints were baseless, SRU administrators gave them credence as part of a larger campaign against Dr. Solano.

90. Many of Dr. Nicholls's complaints concerned actions that non-Hispanic and/or heterosexual faculty at SRU have engaged in without penalty.

91. Dr. Nicholls's harassment of Dr. Solano has been repeated and continual.

92. Dr. Nicholls made negative comments about Dr. Solano and the fact that he is not a native speaker of English.

93. The pretextual nature of Dr. Nicholls's complaints–and the administration's continual entertainment of these accusations–masked sexist and homophobic animus towards Dr. Solano.

94. The constant harassment has negatively impacted upon Dr. Solano's mental and physical health.

95. The hostile work environment constitutes an adverse employment action/treatment.

96. SRU administrators–including Ms. McCoy–were aware or should have been aware of the fact that Dr. Nicholls's complaints were baseless yet still used them as a basis to conduct frivolous investigations into Dr. Solano's conduct.

97. Dr. Solano attempted to raise concerns regarding the ongoing harassment that he has been experiencing with the SRU Provost, Michael Zeig, but was cautioned against doing so by SRU administrators.

98. The ongoing harassment of Dr. Solano has mushroomed into a larger campaign against him.

99. In January 2024, a reorganization of separate departments in the SRU College of Business led to the formation of the Department of Finance, Accounting, Marketing, and Economics ("FAME") and the Management Department.

100. On February 1, 2024, Dr. Solano was one of two candidates for the chair of the newly merged Management Department.

101. The voting was scheduled to close at midnight on February 1, 2024; four hours before the vote was scheduled to close, SRU cancelled the election based on unfounded and false claims that the ballots were not secret.

102. The nullification of a departmental election is a rare development.

103. Based upon knowledge and belief Dr. Nicholls played a role in the ultimate nullification of the election.

104. Ultimately, the SRU administration was the final catalyst in the decision to nullify the election.

105. During the Spring 2024, Dr. Solano was teaching some of his courses online; at the time he had a partial load so as to accommodate his responsibilities as department chair.

106. SRU administrators nullified the aforementioned election when it became clear that Dr. Solano was winning.

107. SRU knew, or should have known, that nullifying his electoral victory would be profoundly upsetting to Dr. Solano.

108. The nullification of a department chair election continues a pattern of harassment against Dr. Solano where the administration is swift to take actions against him based on false claims

109. As chair, Dr. Solano was expected to be on campus for at least three weeks over the summer, even though students were not on campus since classes were not in session.

110. Dr. Solano fulfilled his contractual obligations and expectations, but some of his colleagues would continue to check his office periodically to see if he was physically present.

111. The SRU administration has engaged in subsequent actions that further marginalized Dr. Solano.

112. In April 2024, the Sport Management program was transferred away from Dr. Solano's Management Department to the Department of Strategic Communications and Media.

113. After the aforementioned transfer the combined department was called the Communications Media and Sport Management ("CMSM Department").

114. After the Sport Management program was transferred out of the Management Department, the size of Dr. Solano's department decreased by three faculty members.

115. Since departmental chairs at SRU receive a stipend proportional to the number of faculty that they oversee, the reduction of Dr. Solano's department led to a decrease in his income.

116. Currently, Dr. Solano is overseeing only 18 faculty members; if he were to be overseeing more than 20 faculty members his compensation would be increased.

117. As a result of the transfer Dr. Solano's pay is being reduced.

118. Furthermore, Dr. Solano is receiving only a release of two courses per semester; had

the transfer not occurred he would have been receiving a release of three courses per semester.

119. Dr. Nicholls's campaign against Dr. Solano is ongoing, and as late as May 2024 she accused him of demonstrating favoritism towards male students.

120. As a result of how he is being treated by his colleagues, Dr. Solano is suffering from, *inter alia*, anhedonia, insomnia, poor appetite, anxiety, fatigue, and lack of energy.

121. Dr. Solano has been experiencing symptoms of severe depression and those symptoms are worsening.

122. The worsening of Dr. Solano's condition is directly attributable to the increasing stress that he is experiencing at work.

123. The mounting stress had created vision problems that Dr. Solano was ultimately able to obtain treatment for.

124. To mitigate his depressive symptoms Dr. Solano has been prescribed powerful anti-depressant medications by his physician.

125. Dr. Solano has also been diagnosed with Attention Deficit/Hyperactivity Disorder ("ADHD").

126. SRU administrators are aware of Dr. Solano's mental health problems and ADHD diagnosis.

127. Even though she was aware of the continual harassment of Dr. Solano, Ms. McCoy failed to protect him from further harassment.

128. To the contrary, Ms. McCoy served to facilitate the continued harassment of Dr. Solano.

129. Critically, even though he is suffering from ADHD and from other mental health

issues, SRU has not taken any steps to accommodate Dr. Solano's disability.

130. The harassment and hostile work environment has become so acute that Dr. Solano is considering stepping down as department chair to preserve his health as management apparently wants.

131. Dr. Solano's colleagues–including his principal harasser, Dr. Nicholls–who are outside of his protected classes have not been subjected to similar harassment.

132. The persistent, ongoing hostile work environment has worsened Dr. Solano's mental and physical health and constitutes an ongoing adverse employment action.

133. Because of the ill-will engendered by Dr. Nicholls and her allies within the SRU administration, Dr. Solano has been isolated within his department.

134. The isolation experienced by Dr. Solano has marked him for subsequent attack from Dr. Nicholls and her allies within the SRU administration.

135. The SRU administration has furthered the harassment and isolation of Dr. Solano by, among other actions, nullifying the election for departmental chair.

136. Dr. Solano has been subjected to adverse treatment on account of his sexual orientation, race/national origin, and disability.

137. SRU and Ms. McCoy know that a hostile work environment exists against Dr. Solano, have fostered it, and have done nothing to curtail it.

138. Dr. Solano was subjected to an adverse employment action on the basis of his national origin, sex, sexual orientation, and disability.

139. Dr. Solano's disabilities were not accommodated.

140. Dr. Solano demands a jury trial.

## VI. COUNTS

### COUNT I: DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN VIOLATION OF TITLE VII (42 U.S.C. § 2000e et seq.) Plaintiff Roger Solano v. Defendant Slippery Rock University

141. The preceding paragraphs are incorporated as if set forth at length herein.

142. Dr. Solano is Hispanic and of Venezuelan national origin and, as such, is a member of a class protected by Title VII.

143. Dr. Solano is qualified for his position at SRU.

144. Dr. Solano was subjected to a hostile work environment in the form of increased criticism and scrutiny.

145. The aforementioned hostile work environment constitutes an adverse employment action.

146. SRU administrators were fully aware of the ongoing harassment of Dr. Solano yet did nothing to stop it.

147. Dr. Solano was further subjected to an adverse employment action when the election for Management Department chair was nullified.

148. Even though Dr. Solano would subsequently be elected chair of the Management Department, the number of faculty members within that Department was reduced.

149. At SRU the compensation of department chairs is linked to the number of faculty members, the number of undergraduate students, and the number of graduate students,

150. Since the compensation of department chairs at SRU is tied to the number of faculty members within a particular department, the fact that Dr. Solano now oversees fewer faculty members has led to a demonstrable decrease in his income.

151. The decrease in Dr. Solano's compensation constitutes an adverse employment action.

152. SRU administrators have worked often in furtherance of Dr. Nicholls in her ongoing campaign of harassment against Dr. Solano and to harm his career.

153. Dr. Solano's continued position as a departmental chair remains precarious.

154. Similarly situated SRU faculty members who were not Hispanic or of Venezuelan national origin were not subjected to similar adverse employment action.

155. Dr. Solano was subjected to adverse employment action on account of his race/national origin.

156. Dr. Solano seeks all remedies and damages permitted under Title VII, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

**COUNT II: DISCRIMINATION ON THE BASIS OF SEX/SEXUAL ORIENTATION VIOLATION OF TITLE VII (42 U.S.C. § 2000e et seq.)**
**Plaintiff Roger Solano v. Defendant Slippery Rock University**

157. The preceding paragraphs are incorporated as if set forth at length herein.

158. Dr. Solano is a homosexual man and, as such, is a member of a class protected by Title VII.

159. Dr. Solano was qualified for his position at SRU.

160. Dr. Solano was subjected to a hostile work environment in the form of increased criticism and scrutiny.

161. The attacks on Dr. Solano were specifically homophobic in that he was accused of favoring young, male faculty for favorable assignments.

162. The aforementioned hostile work environment constitutes an adverse employment action.

163. SRU administrators were fully aware of the ongoing harassment of Dr. Solano yet did nothing to stop it.

164. Dr. Solano was further subjected to an adverse employment action when the election for Management Department chair was nullified.

165. Even though Dr. Solano would subsequently be elected chair of the Management Department, the number of faculty members within that Department was reduced.

166. Since the compensation of department chairs at SRU is tied to the number of faculty members within a particular department, the fact that Dr. Solano now oversees fewer faculty members has led to a demonstrable decrease in his income.

167. The decrease in Dr. Solano's compensation constitutes an adverse employment action.

168. SRU administrators have worked often in furtherance of Dr. Nicholls in her ongoing campaign of harassment against Dr. Solano and to harm his career.

169. Dr. Solano's continued position as a departmental chair remains precarious.

170. Similarly situated female and/or non-homosexual faculty members at SRU were not subjected to similar adverse employment action.

171. Dr. Solano was subjected to adverse employment action on the basis of his sex and sexual orientation.

172. Dr. Solano seeks all remedies and damages permitted under Title VII, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages,

reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

**COUNT III: RETALIATION**
**VIOLATION OF TITLE VII (42 U.S.C. § 2000e et seq.)**
**Plaintiff Roger Solano v. Defendant Slippery Rock University**

173. The preceding paragraphs are incorporated as if set forth at length herein.

174. Dr. Solano engaged in actions protected by Title VII when he complained about Dr. Nicholls's homophobic harassment to the SRU administration.

175. Dr. Solano's complaints led to him being subject to increased and more intense scrutiny.

176. The attacks on Dr. Solano were specifically homophobic in that he was accused of favoring young, male faculty for favorable assignments.

177. The aforementioned hostile work environment constitutes an adverse employment action.

178. SRU administrators were fully aware of the ongoing harassment of Dr. Solano yet did nothing to stop it.

179. Dr. Solano was further subjected to an adverse employment action when the election for Management Department chair was nullified.

180. Even though Dr. Solano would subsequently be elected chair of the Management Department, the number of faculty members within that Department was reduced.

181. Since the compensation of department chairs at SRU is tied to the number of faculty members within a particular department, the fact that Dr. Solano now oversees fewer faculty members has led to a demonstrable decrease in his income.

182. The decrease in Dr. Solano's compensation constitutes an adverse employment

action.

183. SRU administrators have worked often in furtherance of Dr. Nicholls in her ongoing campaign of harassment against Dr. Solano and to harm his career.

184. Dr. Solano's continued position as a departmental chair remains precarious.

185. Similarly situated faculty members at SRU were not subjected to similar adverse employment actions.

186. Dr. Solano was subjected to adverse employment action because he had complained of homophobic treatment on the part of Dr. Nicholls.

187. Dr. Solano seeks all remedies and damages permitted under Title VII, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

**COUNT IV: DISCRIMINATION ON THE BASIS OF SEX/SEXUAL ORIENTATION VIOLATION OF TITLE IX (20 U.S.C. § 1681 et seq.)**
**Plaintiff Roger Solano v. Defendant Slippery Rock University**

188. The preceding paragraphs are incorporated as if set forth at length herein.

189. Title IX prohibits educational institutions that receive funding from the federal government from engaging in discrimination on the basis of sex.

190. As a state-owned institution of post-secondary education SRU receives funding from the federal government.

191. Dr. Solano is a homosexual man and, as such, is a member of a class protected by Title IX.

192. Dr. Solano was qualified for his position at SRU.

193. Dr. Solano was subjected to a hostile work environment in the form of increased

criticism and scrutiny.

194. The attacks on Dr. Solano were specifically homophobic in that he was accused of favoring young, male faculty for favorable assignments.

195. The aforementioned hostile work environment constitutes an adverse employment action.

196. SRU administrators were fully aware of the ongoing harassment of Dr. Solano yet did nothing to stop it.

197. Dr. Solano was further subjected to an adverse employment action when the election for Management Department chair was nullified.

198. Even though Dr. Solano would subsequently be elected chair of the Management Department, the number of faculty members within that Department was reduced.

199. Since the compensation of department chairs at SRU is tied to the number of faculty members within a particular department, the fact that Dr. Solano now oversees fewer faculty members has led to a demonstrable decrease in his income.

200. The aforementioned decrease in Dr. Solano's compensation constitutes an adverse employment action.

201. SRU administrators have worked often in furtherance of Dr. Nicholls in her ongoing campaign of harassment against Dr. Solano and to harm his career.

202. Dr. Solano's continued position as a department chair remains precarious.

203. Similarly situated female and/or non-homosexual faculty members at SRU were not subjected to similar adverse employment action.

204. Dr. Solano was subjected to adverse employment action on the basis of his sex and

sexual orientation.

205. Administrators at SRU were aware of the adverse and discriminatory treatment of Dr. Solano.

206. Dr. Solano seeks all remedies and damages permitted under Title IX, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

**COUNT V: RETALIATION**
**VIOLATION OF TITLE IX (20 U.S.C. § 1681 et seq.)**
**Plaintiff Roger Solano v. Defendant Slippery Rock University**

207. The preceding paragraphs are incorporated as if set forth at length herein.

208. Title IX prohibits educational institutions that receive funding from the federal government from engaging in discrimination on the basis of sex.

209. As a state-owned institution of post-secondary education SRU receives funding from the federal government.

210. Dr. Solano engaged in actions protected by Title IX when he complained about Dr. Nicholls's homophobic harassment to the SRU administration.

211. Dr. Solano's complaints led to him being subject to increased and more intense scrutiny.

212. The attacks on Dr. Solano were specifically homophobic in that he was accused of favoring young, male faculty for favorable assignments.

213. The aforementioned hostile work environment constitutes an adverse employment action.

214. SRU administrators were fully aware of the ongoing harassment of Dr. Solano yet

did nothing to stop it.

215. Dr. Solano was further subjected to an adverse employment action when the election for Management Department chair was nullified.

216. Even though Dr. Solano would subsequently be elected chair of the Management Department, the number of faculty members within that Department was reduced.

217. Since the compensation of department chairs at SRU is tied to the number of faculty members within a particular department, the fact that Dr. Solano now oversees fewer faculty members has led to a demonstrable decrease in his income.

218. The decrease in Dr. Solano's compensation constitutes an adverse employment action.

219. SRU administrators have worked often in furtherance of Dr. Nicholls in her ongoing campaign of harassment against Dr. Solano and to harm his career.

220. Dr. Solano's continued position as a departmental chair remains precarious.

221. Similarly situated faculty members at SRU were not subjected to similar adverse employment actions.

222. Dr. Solano was subjected to adverse employment because he had complained of homophobic treatment on the part of Dr. Nicholls.

223. SRU administrators were aware of the ongoing retaliation against Dr. Solano.

224. Dr. Solano seeks all remedies and damages permitted under Title IX, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

**COUNT VI: DISCRIMINATION ON THE BASIS OF DISABILITY VIOLATION OF THE REHABILITATION ACT (29 U.S.C. § 794 et seq.) Plaintiff Roger Solano v. Defendant Slippery Rock University**

225. The preceding paragraphs are incorporated as if set forth at length herein.

226. The Rehabilitation Act prohibits institutions that receive funding from the federal government from discriminating on the basis of disability.

227. As a state-owned institution of post-secondary education SRU receives funding from the federal government.

228. Dr. Solano suffers from, and has been treated for, severe depression and anxiety.

229. Dr. Solano's mental condition is manifesting itself in the form of anhedonia, insomnia, poor appetite, anxiety, fatigue, and lack of energy.

230. On account of his worsening medical condition Dr. Solano's physicians have been prescribing him powerful anti-depressant medications.

231. Dr. Solano's mental condition has led to the impairment of basic bodily functions–namely thinking–and constitutes a disability per the Rehabilitation Act.

232. Dr. Solano was qualified for his position at SRU.

233. Dr. Solano was subjected to a hostile work environment in the form of increased criticism and scrutiny.

234. The aforementioned hostile work environment constitutes an adverse employment action.

235. SRU administrators were fully aware of the ongoing harassment of Dr. Solano yet did nothing to stop it.

236. Dr. Solano was further subjected to an adverse employment action when the election

for Management Department chair was nullified.

237. Even though Dr. Solano would subsequently be elected chair of the Management Department, the number of faculty members within that Department was reduced.

238. Since the compensation of departmental chairs at SRU is tied to the number of faculty members within a particular department, the fact that Dr. Solano now oversees fewer faculty members has led to a demonstrable decrease in his income.

239. The decrease in Dr. Solano's compensation constitutes an adverse employment action.

240. SRU administrators have worked often in furtherance of Dr. Nicholls in her ongoing campaign of harassment against Dr. Solano and to harm his career.

241. Dr. Solano's continued position as a departmental chair remains precarious.

242. The adverse treatment of Dr. Solano has exacerbated his mental health problems.

243. Dr. Solano's worsening mental health problems have not been accommodated by SRU.

244. Similarly situated non-disabled faculty members at SRU were not subjected to similar adverse employment action.

245. Dr. Solano was subjected to adverse employment action on the basis of his sex and sexual orientation.

246. Dr. Solano seeks all remedies and damages permitted under the Rehabilitation Act, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

**COUNT VII: DISCRIMINATION ON THE BASIS OF DISABILITY**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**(42 U.S.C. § 12101 et seq.)**
**Plaintiff Roger Solano v. Defendant Slippery Rock University**

247. The preceding paragraphs are incorporated as if set forth at length herein.

248. Dr. Solano suffers from, and has been treated for, severe depression and anxiety.

249. Dr. Solano's declining mental health is manifesting itself in the form of anhedonia, insomnia, poor appetite, anxiety, fatigue, and lack of energy.

250. On account of his worsening medical condition Dr. Solano's physicians have been prescribing him powerful anti-depressant medication.

251. Dr. Solano's depression loss has interfered with basic bodily functions–namely thinking–and constitutes a disability per the Americans with Disabilities Act ("ADA").

252. Dr. Solano was qualified for his position at SRU.

253. Dr. Solano was subjected to a hostile work environment in the form of increased criticism and scrutiny.

254. The aforementioned hostile work environment constitutes an adverse employment action.

255. SRU administrators were fully aware of the ongoing harassment of Dr. Solano yet did nothing to stop it.

256. Dr. Solano was further subjected to an adverse employment action when the election for Management Department chair was nullified.

257. Even though Dr. Solano would subsequently be elected chair of the Management Department, the number of faculty members within that Department was reduced.

258. Since the compensation of department chairs at SRU is tied to the number of faculty

members within a particular department, the fact that Dr. Solano now oversees fewer faculty members has led to a demonstrable decrease in his income.

259. The decrease in Dr. Solano's compensation constitutes an adverse employment action.

260. SRU administrators have worked often in furtherance of Dr. Nicholls in her ongoing campaign of harassment against Dr. Solano and to harm his career.

261. Dr. Solano's continued position as a department chair remains precarious.

262. The adverse treatment of Dr. Solano has exacerbated his mental health problems.

263. Dr. Solano's worsening mental health problems have not been accommodated by SRU.

264. Similarly situated non-disabled faculty members at SRU were not subjected to similar adverse employment action.

265. Dr. Solano was subjected to adverse employment action on the basis of his sex and sexual orientation.

266. Dr. Solano seeks all remedies and damages permitted under the ADA, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

**COUNT VIII: DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT (43 P.S. § 962 et seq.)**
**Plaintiff Roger Solano v. Defendant Holly McCoy**

267. The preceding paragraphs are incorporated as if set forth at length herein.

268. This claim is being brought against Defendant McCoy in her personal capacity.

269. Dr. Solano is Hispanic and of Venezuelan national origin and, as such, is a member

of a class protected by the PHRA.

270. Dr. Solano is qualified for his position at SRU.

271. Dr. Solano was subjected to a hostile work environment in the form of increased criticism and scrutiny.

272. The aforementioned hostile work environment constitutes an adverse employment action.

273. SRU administrators were fully aware of the ongoing harassment of Dr. Solano yet did nothing to stop it.

274. Dr. Solano was further subjected to an adverse employment action when the election for Management Department chair was nullified.

275. Even though Dr. Solano would subsequently be elected chair of the Management Department, the number of faculty members within that Department was reduced.

276. Since the compensation of department chairs at SRU is tied to the number of faculty members within a particular department, the fact that Dr. Solano now oversees fewer faculty members has led to a demonstrable decrease in his income.

277. The decrease in Dr. Solano's compensation constitutes an adverse employment action.

278. SRU administrators have worked often in furtherance of Dr. Nicholls in her ongoing campaign of harassment against Dr. Solano and to harm his career.

279. Dr. Solano's continued position as a departmental chair remains precarious.

280. Similarly situated SRU faculty members who were not Hispanic or of Venezuelan national origin were not subjected to similar adverse employment action.

281. Dr. Solano was subjected to adverse employment action on account of his race/national origin.

282. As a supervisory employee, Ms. McCoy aided and abetted the discriminatory actions against Dr. Solano.

283. Dr. Solano seeks all remedies and damages permitted under the PHRA, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

**COUNT IX: DISCRIMINATION ON THE BASIS OF SEX/SEXUAL ORIENTATION VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT (43 P.S. § 962 et seq.)**
**Plaintiff Roger Solano v. Defendant Holly McCoy**

284. The preceding paragraphs are incorporated as if set forth at length herein.

285. This claim is being brought against Defendant McCoy in her personal capacity.

286. Dr. Solano is a homosexual man and, as such, is a member of a class protected by the PHRA.

287. Dr. Solano was qualified for his position at SRU.

288. Dr. Solano was subjected to a hostile work environment in the form of increased criticism and scrutiny.

289. The attacks on Dr. Solano were specifically homophobic in that he was accused of favoring young, male faculty for favorable assignments.

290. The aforementioned hostile work environment constitutes an adverse employment action.

291. SRU administrators were fully aware of the ongoing harassment of Dr. Solano yet did nothing to stop it.

292. Dr. Solano was further subjected to an adverse employment action when the election for Management Department chair was nullified.

293. Even though Dr. Solano would subsequently be elected chair of the Management Department, the number of faculty members within that Department was reduced.

294. Since the compensation of department chairs at SRU is tied to the number of faculty members within a particular department, the fact that Dr. Solano now oversees fewer faculty members has led to a demonstrable decrease in his income.

295. The decrease in Dr. Solano's compensation constitutes an adverse employment action.

296. SRU administrators have worked often in furtherance of Dr. Nicholls in her ongoing campaign of harassment against Dr. Solano and to harm his career.

297. Dr. Solano's continued position as a departmental chair remains precarious.

298. Similarly situated female and/or non-homosexual faculty members at SRU were not subjected to similar adverse employment action.

299. Dr. Solano was subjected to adverse employment action on the basis of his sex and sexual orientation.

300. As a supervisory employee, Ms. McCoy aided and abetted the discriminatory actions against Mr. Solano.

301. Dr. Solano seeks all remedies and damages permitted under the PHRA, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

**COUNT X: RETALIATION**
**VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT (43 P.S. § 962 et seq.)**
**Plaintiff Roger Solano v. Defendant Holly McCoy**

302. The preceding paragraphs are incorporated as if set forth at length herein.

303. This claim is being brought against Defendant McCoy in her personal capacity.

304. Dr. Solano engaged in actions protected by the PHRA when he complained about Dr. Nicholls's homophobic harassment to the SRU administration.

305. Dr. Solano's complaints led to him being subject to increased and more intense scrutiny.

306. The attacks on Dr. Solano were specifically homophobic in that he was accused of favoring young, male faculty for favorable assignments.

307. The aforementioned hostile work environment constitutes an adverse employment action.

308. Dr. Solano was further subjected to an adverse employment action when the election for Management Department chair was nullified.

309. Even though Dr. Solano would subsequently be elected chair of the Management Department, the number of faculty members within that Department was reduced.

310. Since the compensation of department chairs at SRU is tied to the number of faculty members within a particular department, the fact that Dr. Solano now oversees fewer faculty members has led to a demonstrable decrease in his income.

311. The decrease in Dr. Solano's compensation constitutes an adverse employment action.

312. SRU administrators have worked often in furtherance of Dr. Nicholls in her ongoing

campaign of harassment against Dr. Solano and to harm his career.

313. Dr. Solano's continued position as a departmental chair remains precarious.

314. Similarly situated faculty members at SRU were not subjected to similar adverse employment actions.

315. Dr. Solano was subjected to adverse employment because he had complained of homophobic treatment on the part of Dr. Nicholls.

316. As a supervisory employee, Ms. McCoy aided and abetted the discriminatory actions against Mr. Solano.

317. Dr. Solano seeks all remedies and damages permitted under the PHRA, including, but not limited to, back pay, front pay, emotional distress, medical harm, reputation harm damages, reinstatement, attorney's fees, costs, and pre-judgment and post-judgment interest.

Respectfully Submitted,

LIEBER HAMMER HUBER & PAUL, P.C.

s/James B. Lieber
James B. Lieber
Pa. I.D. No. 21748
Thomas M. Huber
Pa. I.D. No. 83053
Jacob M. Simon
Pa. I.D. No. 202610
1722 Murray Avenue, 2nd Floor
Pittsburgh, PA 15217
Counsel for Plaintiff
jlieber@lhhb-law.com
thuber@lhhb-law.com
jsimon@lhhb-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall serve notice upon the following:

Jorden P. Colalella
McCall B. Chafin
Office of the Attorney General
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222

Counsel for Defendants

s/James B. Lieber
James B. Lieber