IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROGER SOLANO, PhD,

        *Plaintiff,*

    v.

SLIPPERY ROCK UNIVERSITY OF
PENNSYLVANIA *and* HOLLY MCCOY,

        *Defendants.*

Civil Action No. 2:24-cv-1542

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff Roger Solano, Ph.D. ("Dr. Solano") brought an action against Defendants Slippery Rock University ("SRU") and Holly McCoy ("McCoy") (collectively "the University Defendants") seeking damages and alleging discrimination on the basis of national origin, sex, and sexual orientation under Title VII (42 U.S.C. § 2000e *et seq.*), Title IX (20 U.S.C. § 1681 *et seq.*), and the Pennsylvania Human Relations Act ("PHRA") (43 P.S. § 962 *et seq.*), retaliation under Title VII, Title IX, and the PHRA, and discrimination on the basis of disability under the Rehabilitation Act ("RA") (29 U.S.C. § 794 *et seq.*) and the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12101 *et seq.*). (ECF No. 11). The University Defendants filed a motion to dismiss Dr. Solano's first amended complaint. (ECF No. 15). For the following reasons, the motion will be granted.

## I.    FACTUAL BACKGROUND

SRU is a state-owned higher education institution. (ECF No. 11, ¶ 2). McCoy is employed by SRU as the director of human resources. (*Id.* ¶¶ 3, 16). Dr. Solano is employed by

1

SRU as chair of the Department of Management and Marketing ("Management and Marketing Department.") (*Id.* ¶ 1); (ECF No. 15, ¶ 1). Dr. Solano was born in Venezuela, is Hispanic, and is fluent in both Spanish and English. (ECF No. 11, ¶¶ 18-19). He holds a Ph.D. in industrial engineering from the New Jersey Institute of Technology. (*Id.* ¶ 17). Dr. Solano is openly homosexual. (*Id.* ¶ 20). He asserts that he has been treated for generalized anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), and insomnia since 2020. (*Id.* ¶ 21).

Dr. Solano has worked at SRU since 2009, and he has served as the Management and Marketing Department chair since May 2019. (ECF No.11, ¶ 22). He alleges that Dr. Nicholls, a fellow professor in the Management and Marketing Department and former chair of the University Promotion Committee and Departmental Promotion Committee, was a key instigator in the campaign of hostility and harassment directed towards him that was further enabled by SRU's administration. (*Id.* ¶¶ 26, 27, 34). Dr. Solano avers that since he became chair of his department in 2019, Dr. Nicholls criticized nearly every decision he made, including decisions related to trivial matters. (*Id.* ¶ 36). He states that although this criticism gave rise to a "hostile work environment," SRU administrators failed to take any steps to ease these mounting tensions within the Management and Marketing Department. (*Id.* ¶ 38). Further, it is alleged that Dr. Nicholls' complaints against Dr. Solano alluded to his race/national origin, accused him of giving preferential treatment to younger, male faculty with respect to scheduling, accused him of fostering a lack of honesty and transparency in their department and blocking a curriculum change, amongst other things. (*Id.* ¶¶ 40, 41, 44, 61). SRU conducted an investigation and concluded that Dr. Solano's actions, specified in Dr. Nicholls' complaints, did not violate their Harassment and Discrimination Policy. (*Id.* ¶ 79).

Dr. Solano also recounts that he was one of two candidates in the 2024 election for chair of the Management and Marketing Department, and that SRU cancelled the election based on claims that the ballots were not secret and based, in part, by Dr. Nicholls' influence. (ECF No. 11, ¶¶ 100-103). Ultimately, Dr. Solano was elected chair of the Management and Marketing Department. (*Id.* ¶ 109). Dr. Solano believes that Dr. Nicholls' complaints and harassment towards him, along with SRU administration's entertainment of her accusations, constituted sexist and homophobic animus toward him. (*Id.* ¶ 93). As a result of such treatment, Dr. Solano states that he suffers from severe depression, insomnia, anxiety, fatigue, and lack of energy, and that he is considering stepping down as department chair to preserve his health. (*Id.* ¶¶ 120, 121, 130). Lastly, Dr. Solano alleges that his disabilities, including ADHD and other mental health issues, were not accommodated by SRU, creating a hostile work environment, and that McCoy knew this yet did nothing to remedy the situation. (*Id.* ¶¶ 129, 137, 139).

Dr. Solano filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") in February 2024, docketed at 533-2024-01080, raising claims for retaliation and discrimination on the basis of sex, sexual orientation, national origin, and disability. (ECF No. 11, ¶¶ 6-7). On August 20, 2024, the EEOC issued a "Right to Sue" notice. (*Id.* ¶ 9). Then on October 18, 2024, Dr. Solano filed a second EEOC complaint, docketed at 533-2025-00283, alleging sex, sexual orientation, national origin, disability discrimination, retaliation, and hostile work environment. (*Id.* ¶¶ 11-12). Both EEOC complaints were cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). (*Id.* ¶¶ 8, 13). The PHRC indicated, per a letter dated October 21, 2024, that it would be closing its investigation into Dr. Solano's complaint, making his claims ripe for adjudication under Pennsylvania law. (*Id.* ¶ 10). Dr. Nicholls also filed an administrative complaint with the EEOC against Dr. Solano and SRU

in October 2022, specifically alleging that "Dr. Solano gave preferential treatment to younger, male faculty with respect to scheduling." (*Id.* ¶ 60). Dr. Solano contends that this was "a thinly veiled anti-gay attack." (*Id.* ¶ 61). Dr. Nicholls' complaint was ultimately dismissed by the EEOC when they issued a "Right to Sue" notice. (*Id.* ¶ 67).

Dr. Solano filed his initial complaint on November 11, 2024. (ECF No. 1). The University Defendants filed a motion to dismiss this initial complaint. (ECF No. 8). In response, Dr. Solano filed an amended complaint on March 26, 2025, which is the operative complaint at issue. (ECF No. 11). The University Defendants then filed a renewed motion to dismiss the amended complaint. (ECF No. 15).

## II.    STANDARD OF REVIEW

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must

4

be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

### III.    ANALYSIS

**A.  Dr. Solano's Claims Arising Under Title VII and Title IX**

1.  Count I - Discrimination on the basis of national origin under Title VII

Dr. Solano brings a discrimination claim on the basis of national origin in violation of Title VII at Count I. (ECF No. 11, p. 15). He alleges that "he was subjected to a hostile work environment in the form of increased criticism and scrutiny," and that "similarly situated SRU faculty members who were not Hispanic or of Venezuelan national origin were not subjected to similar adverse employment action on account of his race/national origin." (*Id.* ¶¶ 144, 154). In response, the University Defendants argue that the facts alleged do not bear an inference of intentional discrimination, and that none of Dr. Nicholls' conduct or comments referenced Dr. Solano's national origin. (ECF No. 16, pp. 5, 8).

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII prohibits discrimination with respect to employment decisions that have direct economic consequences, such as termination, demotion, and pay cuts. *Vance v.*

*Ball State Univ.*, 570 U.S. 421, 426 (2013). Additionally, Title VII prohibits the creation of a hostile work environment. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-66 (1986). The United States Supreme Court held that for a plaintiff to establish a hostile work environment claim, he or she must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered. *See, e.g.*, *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (stating that "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.") (internal citations omitted). Specifically, the United States Court of Appeals for the Third Circuit has held that to succeed on a hostile work environment claim, a plaintiff must establish that "1) the employee suffered intentional discrimination because of his/her sex/membership in a protected class, 2) the discrimination was pervasive and regular, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability. The first four elements establish a hostile work environment, and the fifth element determines employer liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (internal citations omitted); *Woodard v. PHB Die Casting*, 255 F. App'x 608, 609 (3d Cir. 2007). A plaintiff must be able to show that the workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *Perry v. Harvey*, 332 F. App'x 728, 730-31 (3d Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

As to the first element of a hostile work environment claim, Dr. Solano's averments in his amended complaint do not establish that he endured true, intentional discrimination due to his Hispanic heritage.  To support this claim, he refers to an isolated incident in 2019 when Dr. Nicholls complained about the wording of an email he sent, thereby "alluding to" his efficiency with the English language.  (ECF No. 11, ¶ 41).  This is the only national origin-specific incident Dr. Solano alleges to support his discrimination claim.  The Court finds that while this may have been an intentional criticism by Dr. Nicholls, there is not enough substance within the amended complaint to plausibly infer that this constituted intentional discrimination based on Dr. Solano's national origin.

Further, even if the Court found this to be intentional discrimination, it does not find the alleged conduct to be pervasive or regular because Dr. Solano alleges no incidents beyond the one discussed above that relate to his national origin.  One complaint, containing comments that do not specifically mention Dr. Solano's  race or ethnicity, but that he subjectively believes "alluded" to such, is not enough to satisfy the second element.

The University Defendants also point out that although Dr. Solano claims he has been detrimentally affected by the above, he is unable to point to a negative impact upon his employment because he, ultimately, was promoted to chair of the Management and Marketing Department.  (ECF No. 16, pp. 10, 14); (ECF No. 11, ¶¶ 109-115).  Thus, Dr. Solano also fails to meet the third and fourth elements.

As Dr. Solano has failed to plead the existence of a hostile work environment based on his national origin[1], Count I of the amended complaint will be dismissed.

---

[1] *Respondeat superior* liability was also not adequately pled.  As the University Defendants point out, liability under this theory exists depending on whether the perpetrator/harasser is the victim's supervisor or a co-worker.  Here, the amended complaint merely alleges that Dr.

2. <u>Count II – Discrimination on the basis of sex/sexual orientation under Title VII</u>

Dr. Solano brings a discrimination claim on the basis of sex/sexual orientation in violation of Title VII at Count II. (ECF No. 11, p. 16). He alleges that he is an openly homosexual man and that "attacks on [him] were specifically homophobic in that he was accused of favoring young, male faculty for favorable assignments." (*Id.* ¶ 161). He further alleges that similarly situated female and/or non-homosexual faculty members at SRU were not subjected to similar adverse employment action. (*Id.* ¶ 170). In response, the University Defendants argue that the facts alleged do not bear an inference of intentional discrimination, and that none of Dr. Nicholls' conduct or comments infer animus based on his sexual orientation. (ECF No. 16, p. 7).

Title VII sex discrimination claims are controlled by the *McDonnell-Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *Tourtellotte v. Eli Lilly & Co.*, 636 F.App'x 831 (3d Cir. 2016). To establish a prima facie case for discrimination under Title VII and the *McDonnell Douglas* burden-shifting framework, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the position he sought to attain or retain, (3) he suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). Once a plaintiff makes out a prima facie case of sex discrimination, the burden of production shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If the employer does so, the

---

Nicholls "taught in the Management and Marketing department." (ECF No. 11, ¶ 28). There is no allegation that Dr. Nicholls was Dr. Solano's supervisor. Where the harassing employee is a co-worker, the employer is only liable if it was negligent in controlling working conditions. *Vance v. Ball State Univ.*, 570 U.S. 421, 423 (2013). Dr. Solano raises only threadbare allegations of administrative involvement, and the Court finds that he does not plead enough facts to imply that SRU handled Dr. Nicholls' complaints with negligence.

inference of discrimination drops and the burden shifts back to the plaintiff to show that the employer's proffered reason is merely pretext for intentional discrimination. *See id.* at 507–08. To survive a motion to dismiss on a Title VII difference in treatment claim, a plaintiff "need only set forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence that [the plaintiff] was a member of a protected class and that she suffered an adverse employment action." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016)). "[D]etailed pleading is not generally required" but the plausibility standard requires that a pleading show "'more than a sheer possibility that a defendant has acted unlawfully.'" *Connelly*, 809 F.3d at 786 (quoting *Iqbal*, 556 U.S. at 678).

Here, Dr. Solano satisfies the first element of his prima facie case because he is homosexual, and sexual orientation falls within the umbrella of "sex" for purposes of Title VII. Thus, he is a member of a protected class. He also satisfies the second element because he alleges that he holds a Ph.D. in industrial engineering, is fluent in English, has worked at SRU since 2009, and was thus qualified both for employment at SRU and promotion to chair of his department. (ECF No. 11, ¶¶ 17, 19, 22). He further states that he was eventually elected chair, in part because the faculty favored his "strategic vision" for the department. (*Id.* ¶ 29).

However, Dr. Solano fails to plead sufficient facts that meet the third and fourth elements of a prima facie case. The University Defendants highlight that he merely points to "his general frustration with her [Dr. Nicholls] complaints and a cancelled department chair vote" to demonstrate that he was subjected to an adverse employment action. (ECF No. 16, p. 9). But, as already mentioned herein, Dr. Solano became the department chair, and he fails to plead facts showing that he was subjected to an adverse employment action. He attempts to remedy this defect by accusing SRU of reorganizing his department by transferring the sports management

program to another department, causing a decrease in responsibilities, department faculty, and, ultimately, his pay. (*Id.* at 9); (ECF No. 11, ¶¶ 112, 165-66). However, the Court sees this as nothing more than an administrative/department transitional decision made in SRU's regular course of business. Further, the fourth element requires the adverse employment action to have occurred under the circumstances that could give rise to an inference of intentional discrimination. Dr. Solano failed to plead facts that draw a direct connection between the alleged adverse employment action and Dr. Nicholls' alleged harassment or comments and, thus, the Court cannot plausibly infer intentional discrimination.

A plaintiff can make out a prima facie case of sex discrimination by pointing to a similarly-situated individual who is outside the plaintiff's protected class, who engaged in the same conduct as the plaintiff, but whom the defendant treated more favorably. *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998). Where a plaintiff claims to have suffered disparate treatment but does not refer to any similarly-situated individuals and their similar protected conduct, the plaintiff's allegations are insufficient to state a claim under Rule 12(b)(6). *See e.g.*, *Hobson v. St. Luke's Hosp. and Health Network*, 735 F.Supp.2d 206, 213 (E.D. Pa. 2010). Here, the amended complaint does not identify any other similarly situated employees, nor does it reference facts to support Dr. Solano's averment that SRU treated him differently from similarly situated female and/or heterosexual faculty members. Dr. Solano alleges that he was subjected to "adverse employment action on the basis of his sex and sexual orientation" and that "similarly situated female and/or non-homosexual faculty members at SRU were not subjected to similar adverse employment action." (ECF No. 11, ¶¶ 170-71). Nevertheless, *Twombly* is clear that such a formulaic recitation of the elements of a cause of action is insufficient to state a plausible claim. *Twombly*, 550 U.S. at 555; *see also Fisher v.*

*Catholic Soc. Servs.*, 2019 WL 3731688, (E.D. Pa. Aug. 8, 2019) (dismissing plaintiff's discrimination claims where plaintiff failed to plead direct evidence of different treatment based on protected class and where plaintiff failed to identify a similarly-situated comparator.). Dr. Solano's conclusory allegation does not offer any additional support as to the working conditions or complaints against other female or heterosexual faculty members. An allegation of this nature, that tenders threadbare assertions devoid of further factual enhancement, does not have sufficient facial plausibility to allow for a reasonable inference that the University Defendants are liable for the alleged discrimination. Thus, the Court cannot draw a reasonable inference that the University Defendants are liable for the alleged difference in treatment based on sex/sexual orientation. The Court will dismiss Count II of the amended complaint.

     3.  Count IV – Discrimination on the basis of sex/sexual orientation under Title IX

Dr. Solano brings a discrimination claim on the basis of sex/sexual orientation in violation of Title IX at Count IV. (ECF No. 11, p. 19). He states that SRU receives funding from the federal government as a state-owned institution of post-secondary education, and that Title IX prohibits educational institutions that receive federal funding from engaging in discrimination on the basis of sex. (*Id*. ¶¶ 189-190). He alleges that he is an openly homosexual man and that "attacks on [him] were specifically homophobic in that he was accused of favoring young, male faculty for favorable assignments." (*Id*. ¶¶ 191, 194). He further alleges that similarly situated female and/or non-homosexual faculty members at SRU were not subjected to similar adverse employment action. (*Id*. ¶ 203). In response, the University Defendants argue that the facts alleged do not bear an inference of intentional discrimination and that none of Dr. Nicholls' conduct or comments infer animus based on his sexual orientation. (ECF No. 16, pp. 5-11 ).

To establish a Title IX claim for sex discrimination, the plaintiff must plead that (1) he or she was subjected to discrimination in an educational program, (2) that the program receives federal assistance, and (3) that the discrimination was on the basis of sex. *A.H. v. Minersville Area Sch. Dist.*, 290 F. Supp. 3d 321, 326 (M.D. Pa. 2017) (quoting *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 295 (W.D. Pa. 2017)).

The University Defendants concede the second element relating to federal funding and focus only on the remaining elements. (ECF No. 16, p. 5, fn. 1). The Court's analysis, following this concession, is the same as that of a Title VII claim. (*Id.*) Dr. Solano's failure to plead facts directly connecting the alleged adverse employment action and harassment or a case involving a similarly-situated individual does not infer intentional discrimination. Thus, the Court incorporates the prior analysis and holding as to the Title VII discrimination case.

It additionally notes that Dr. Solano cites cases in his argument that, ultimately, support the University Defendants' dismissal argument. He references two cases in which motions to dismiss were denied where "false rumors that a female subordinate was having an affair with a male superior was sufficient to support a sex discrimination claim" and "the insinuation that homosexual men are promiscuous could support a finding that a plaintiff was subjected to a discriminatory or a hostile work environment." (ECF No. 22, p. 6). The allegation against Dr. Solano, that he favored ". . . younger, male faculty with respect to scheduling . . ." is vastly different than the allegations contained within the cases he cites. (*Id.*). An allegation of "favoritism" with nothing more is not the same thing as spreading rumors of a workplace affair or the specific insinuation that male homosexuals are promiscuous. More specifically, in the *Erdmann* case which Dr. Solano cites, the supervisor characterized the plaintiff employee's homosexuality as sinful and urged the employee to adopt her [the supervisor's] religion, and the

court denied summary judgment in the plaintiff's favor. *Erdmann v. Tranquility, Inc.*, 155 F. Supp. 2d 1152, 1156 (N.D. Cal. 2001). This type of characterization is far from what occurred in Dr. Solano's case. There are not enough facts alleged to push these alleged accusations against Dr. Solano into the same category of cases upon which he relies. Thus, the Court will dismiss Count IV of the amended complaint for failure to state a claim.[2]

---

[2] Dr. Solano raises a "cat's paw" theory in conjunction with his national origin and sexual orientation discrimination claims but does not allege satisfactory facts. "Today the term 'cat's-paw' refers to 'one used by another to accomplish his purposes.' ... In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decision-making power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *E.E.O.C. v. Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006). Under the theory, an "employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision." *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011). As to Eubanks' cat's paw theory of liability, an employer may "be liable for employment discrimination if the source of illegal animus was not the final employment decision-maker but rather another employee whose animus proximately caused the adverse employment action at issue in the case." *Mason v. Se. Pa. Transp. Auth.*, 134 F. Supp. 3d 868, 874 (E.D. Pa. 2015) (citing *McKenna v. City of Phila.*, 649 F.3d 171, 178 (3d Cir. 2011)); see also *Carter v. Midway Slots & Simulcast*, 894 F. Supp. 2d 529, 543 (D. Del. 2012), aff'd, 511 F. App'x 125 (3d Cir. 2013). Eubanks had to establish (1) a genuine issue of material fact concerning the bias of the subordinate and (2) a genuine issue of material fact "as to whether the proffered reason for the employment action is pretextual, which in a [cat's paw] claim requires [Eubanks] to demonstrate a causal relationship between the subordinate's actions and the employment decision." *Mason*, 134 F. Supp. 3d at 874 (quoting *E.E.O.C*, 450 F.3d at 488.). To establish a causal relationship between the actions of a subordinate and the employment decision, a plaintiff must show proximate cause—" 'some direct relation between the injury asserted and the injurious conduct alleged' and excludes links that are 'remote, purely contingent, or indirect.' " *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 330 (3d Cir. 2015) (quoting *Staub*, 562 U.S. at 419). Dr. Solano argues that, as a voting member of the Management and Marketing Department, she has input and influence over hiring and personnel decisions, and that she has close relationships with SRU administrators. (ECF No. 22, p. 9); (ECF No. 11, ¶¶ 31, 32). He states that due to these relationships and status, SRU itself can be held liable for Dr. Nicholls' alleged discriminatory behavior. It has been established herein that Dr. Nicholls is not Dr. Solano's supervisor. However, the University Defendants argue that, per the above, Dr. Solano must be able to establish a causal link between the actions of a subordinate/non-supervisor and the employment decision. (ECF No. 24, p. 4). The Court incorporates its prior reasoning herein that no adverse employment action occurred, but even if it were to find the opposite, Dr. Solano's factual averments fall short of establishing any causal link between Dr. Nicholls' behavior and the opinions/decisions of SRU's administration. Dr. Solano alleges no facts

4. <u>Count III: Retaliation under Title VII</u>

Dr. Solano brings a retaliation claim in violation of Title VII at Count III. (ECF No. 11, p. 18). He alleges that he was subjected to homophobic harassment and that following his complaints, the election for department chair was nullified, the number of faculty members within the department was reduced, his income decreased, and that SRU administrators worked in furtherance of Dr. Nicholls' ongoing harassment campaign aimed at harming his career. (*Id.* ¶¶ 174, 179, 180, 181, 183). In response, the University Defendants argue that Dr. Solano's claim fails because he is unable to plead facts establishing the second and third elements of a prima facie retaliation claim. (ECF No. 16, p. 15).

To establish a prima facie case for retaliation under Title VII, a plaintiff must prove that (1) he is engaged in activity protected by Title VII, (2) the employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (citing *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). The Supreme Court of the United States has found that the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, and accordingly, "that the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63-64 (2006). Specifically, judicial standards for sexual harassment must filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* at 68

---

showing that Dr. Nicholls' "close relationships" with members of the administration equate to the administration sharing in or encouraging her alleged animus.

(citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). The Supreme Court reasons that this standard is in place due to the importance of separating significant harms from trivial harms. *Id.* Further, to establish a causal connection, a plaintiff must show a connection between his or her opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Moore*, 461 F.3d at 342.

It is established, and the University Defendants concede, that Dr. Solano engaged in protected activity when he complained of Dr. Nicholls' allegedly homophobic harassment to the SRU administration, satisfying the first element. As to the second element, the Court has already held that Dr. Solano fails to plead that SRU took an adverse employment action. Dr. Solano argues that "the hostile work environment [he] has been experiencing is itself an adverse employment action." (ECF No. 22, p. 11). Not only is this statement conclusory, but the Court has found that he failed to establish the existence of a hostile work environment.

As to the third element, even if the Court were to hold that an adverse employment action existed, Dr. Solano is unable to sufficiently plead causation. He attempts to argue that shortly after his complaints about Dr. Nicholls' disconcerting behavior, the hostility towards him worsened, establishing causation, and that from the evidence gleaned from the record as a whole, causation can be inferred. (*Id.* at 14-15). Dr. Solano tries to support this with the claim that he attempted to raise concerns regarding the ongoing harassment that he has been experiencing with SRU Provost Michael Zeig, but was cautioned against doing so by SRU administrators. (ECF No. 11, ¶ 97).

The University Defendants counter with the following timeline of events: Dr. Nicholls filed her EEOC complaints against Dr. Solano and SRU in October 2022, then Dr. Solano found

out in October 2023 that the internal investigation had been terminated with a finding that he did not violate SRU's Harassment and Discrimination policy, and that four months later, SRU cancelled the department chair election in February 2024. (ECF No. 11, ¶¶ 60, 79, 101). And Dr. Solano alleges that he complained to the SRU HR department about Dr. Nicholls' comments as early as 2019, right after he mentions one of her complaints occurred. (Id. ¶¶ 41-42). While there is no bright-line rule for what amount of time demonstrates unusually suggestive behavior, "a span of days, and not months, satisfies the requirement because of the 'unusually suggestive' timing." *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 669–70 (E.D. Pa. 2016) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 n.5 (3d Cir. 2000)). For an unusually suggestive temporal proximity to have occurred between Dr. Solano's protected activity and the alleged retaliatory action, the election cancellation should have occurred much closer in time to Dr. Nicholls' alleged behavior and Dr. Solano's subsequent complaints. However, the election cancellation did not occur until 2024, well over two years after Dr. Solano first complained to the university. The Court finds that no such causal connection exists, nor can one be inferred from the amended complaint's allegations.

Count III will be dismissed.

5. Count V: Retaliation under Title IX

Dr. Solano also brings a retaliation claim in violation of Title IX at Count V, alleging the same theory of relief as that contained within Count III. (ECF No. 11, p. 21). The Title VII retaliation framework is used to analyze claims under Title IX. *See Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992) (relying on *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986), a Title VII case, in determining discrimination under Title IX). To state a claim for retaliation under Title IX, the plaintiff must plausibly allege that he "engaged in activity

protected by Title IX," that he "suffered an adverse action," and that "there was a causal connection between the two." *See, e.g., Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017) (cleaned up); *Moore v. City of Phila.*, 461 F.3d 331, 340–42 (3d Cir. 2006). The analysis must include a federally funded educational institution that engaged in an adverse employment action.

As discussed above, Dr. Solano failed to meet the requisite elements under the Title VII retaliation framework for a prima facie case. The Court incorporates that analysis and finds that he also fails to plead a prima facie case under the Title IX retaliation framework. The Court will dismiss Count V of the amended complaint.

**B.  Dr. Solano's Claims Arising Under the RA and the ADA**

Dr. Solano brings two disability discrimination claims in violation of the RA and the ADA at Counts VI and VII, respectively. (ECF No. 11, pp. 23-26). He alleges that he suffers from and has been treated for severe anxiety and depression, and that his mental condition has led to the impairment of basic bodily functions – "namely thinking." (*Id.* ¶¶ 228, 231). He further alleges that SRU administrators were fully aware of the ongoing harassment directed toward him, that this adverse treatment exacerbated his mental health problems, and that similarly situated non-disabled faculty members were not subjected to similar treatment. (*Id.* ¶¶ 235, 242, 244). In response, the University Defendants argue that Dr. Solano's claims fail because he is unable to plead facts establishing a true disability or that he suffered adverse employment action. (ECF No. 16, p. 16).

A plaintiff's claims under both the RA and the ADA may be analyzed together because the substantive standards for determining liability are the same. *McDonald v. Com. Of Pa., Dep't of Pub. Welfare, Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995). For either claim, a plaintiff must

plausibly allege that (1) he is a disabled person, (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations, and (3) he suffered an otherwise adverse employment decision as a result of discrimination. *Gibbs v. City of Pittsburgh*, 989 F.3d 226, 229 (3d Cir. 2021) (*see also Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). The RA and ADA provide that an individual is disabled if he (1) has a physical or mental impairment that substantially limits one or more major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment. *Laguna*, 616 F. Supp. 3d at 468 (citing 42 U.S.C § 12102(1)). "A request for a reasonable accommodation is a protected activity under the ADA." *Mascioli v. Arby's Rest. Grp., Inc.*, 610 F. Supp. 2d 419, 448 (W.D. Pa. 2009).

The administrative regulations concerning the ADA define mental impairment as "any mental or psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities," and depressive disorders presumably fall within the emotional illness category. 29 C.F.R § 1630.2(h)(2) (*see also Gaul*, 134 F.3d at 579-80 (3d Cir. 1998). The ADA requires a plaintiff-specific analysis as to whether an individual's specific disorder impairs his life in a manner which renders him handicapped or disabled under the acts. *Gaul v. AT & T, Inc.*, 955 F. Supp. 346, 350 (D.N.J. 1997), aff'd sub nom. *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576 (3d Cir. 1998). "The inquiry is, of necessity, an individualized one – whether the particular impairment constitutes for the particular person a significant barrier to employment." *Id.* (citing *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir. 1986)).

Turning first to the analysis of whether Dr. Solano is a disabled person, he clearly meets this definition. "Thinking" is considered a major life activity within the meaning of the ADA.

*Wilkie v. Luzerne County*, 207 F. Supp. 3d 433, 438 (M.D. Pa. 2016); *see also Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 307 (3d Cir. 1999).   He highlights that in *Wilkie* specifically, the court held that a reasonable jury could find that the plaintiff's anxiety substantially limited the major life activity of thinking, placing the claim within the ADA's authority.  *Wilkie*, 207 F. Supp. at 437.   Federal regulations provide that major life activities include, but are not limited to, caring for oneself . . . "concentrating, thinking, communicating, and working."  *Id.* (citing 42 U.S.C. § 12102(2)(A)).  Dr. Solano pleads that he has been treated for severe depression and anxiety, that he has been diagnosed with ADHD, and that his physicians have prescribed him powerful anti-depressant medications, clearly indicating that he suffers from these conditions based upon their professional opinions.  (ECF No. 11, ¶¶ 125, 228-230, 248-250).  Dr. Solano alleges that his anxiety and depression cause him insomnia, poor appetite, and fatigue, and that his condition has led to the impairment of basic bodily functions, specifically, "thinking."  (ECF No. 11, ¶¶ 229, 231).  He also pleads that he is considering stepping down as department chair to preserve his health.  (*Id.* ¶ 130).  Dr. Solano need only meet one of the three prongs to qualify as "disabled," and with the facts averred he meets the second and third prongs.  The Court finds that Dr. Solano has sufficiently pled that he is disabled and, thus, satisfies the first element.

As to the second element, the amended complaint does not provide sufficient facts to support Dr. Solano's conclusory allegation that SRU failed to accommodate his disability.  Dr. Solano does not allege that he specifically requested a reasonable accommodation.  The amended complaint contains no facts regarding the manner in which he reported his disability or requested accommodations, what Dr. Solano allegedly reported and requested, to whom he made his alleged reports and requests, or when he made them.  All that is alleged is that "SRU

19

administrators are aware of Dr. Solano's mental health problems and ADHD diagnosis," and that "SRU has not taken any steps to accommodate Dr. Solano's disability." (ECF No. 11, ¶¶ 126, 129). Regardless of this, Dr. Solano has adequately pled that he was qualified to perform the essential functions of his job. The Court held earlier herein, "Dr. Solano was qualified for his position at SRU" made clear via his education, credentials, and experience. (ECF No. 11, ¶ 252).

As to the third element, the Court is unable to hold, as already discussed herein, that Dr. Solano was subjected to an adverse employment action.

Counts VI and VII will be dismissed.

## C. Dr. Solano's Claims Arising Under the PHRA

Dr. Solano brings two discrimination claims, at Count VIII and Count IX, and one retaliation claim at Count X in violation of the PHRA against McCoy. (ECF No. 11, pp. 23-26). He alleges the same facts for these claims that he did for Counts I, II, and III, and more specifically, he alleges that as a supervisory employee, McCoy aided and abetted the discriminatory actions against Dr. Solano. (*Id.* at ¶¶ 282, 300, 316). In response, the University Defendants argue that Dr. Solano's claims against McCoy fail because they are barred by sovereign immunity. (ECF No. 16, p. 18).

To timely file a suit under the PHRA, a plaintiff must file a claim with the Pennsylvania Human Relations Commission ("PHRC") within 180 days of the alleged act. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir.1997). To prove disparate treatment or discrimination under the PHRA, a plaintiff must show that (1) he belongs to a protected class, (2) he was qualified for the position, (3) he was subject to an adverse employment action despite being qualified, and (4) the action occurred under circumstances raising an inference of unlawful discrimination. *Wilson v. Columbia Gas of Pennsylvania*, 676 F. Supp. 3d 424, 435 (W.D. Pa.

2023) (see also *Rosencrans v. Quixote Enters.*, 755 F. App'x 139, 141 (3d Cir. 2018)). Additionally, to prove retaliation under the PHRA, the plaintiff must meet the same three elements required for retaliation under Title VII. *Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 543 (W.D. Pa. 2010) (citing *Slagle v. County of Clarion*, 435 F.3d 262, 265 (3d Cir. 2006)).

The University Defendants argue that sovereign immunity precludes each of Dr. Solano's PHRA claims, filed against McCoy, personally. The PHRA imposes liability upon supervisory employees who engage in discriminatory actions. 43 P.S. § 955(e) (2025). Per Pennsylvania's sovereign immunity statute, a Commonwealth employee acting within the scope of his or her employment or duties is protected by sovereign immunity from the imposition of liability for intentional tort claims. *Holt v. Nw. Pennsylvania Training P'ship Consortium, Inc.*, 694 A.2d 1134, 1140 (Pa. Commw. Ct. 1997). A "Commonwealth party," which Pennsylvania's Sovereign Immunity Act shields from civil liability, is defined broadly enough to include "any employee" of a "Commonwealth agency" but "only with respect to an act within the scope of his or her office of employment." *Mitchell v. Miller*, 884 F. Supp. 2d 334, 380 (W.D. Pa. 2012) (citing 42 Pa. C.S.A. § 8501). Discriminatory and retaliatory acts committed within the employment context are not among the categories of conduct which the Sovereign Immunity Act has expressly waived the immunity from liability. *Id.* However, Eleventh Amendment sovereign immunity does not apply to officials who are sued in their individual capacities. *Id.* at 381 (citing *Hafer v. Melo*, 502 U.S. 21, 29-31 (1991)).

Sovereign immunity does not apply to Dr. Solano's three PHRA claims because he clearly states that "this claim is being brought against Defendant McCoy in her personal capacity." (ECF No. 11, ¶¶ 268, 285, 303). The merits of these claims must be considered.

Dr. Solano cross-filed each of his complaints with the PHRC, indicating that he exhausted the appliable administrative remedy.  In terms of the facts alleged as to McCoy, she has oversight over the internal grievance process, she was or should have been aware of the fact that Dr. Nicholls' complaints were baseless yet still used them as a basis to conduct frivolous investigations into Dr. Solano's conduct, she failed to protect Dr. Solano from further harassment and served to facilitate his continued harassment, and that she knew a hostile work environment existed yet did nothing to curtail it.  (ECF No. 11, ¶¶ 16, 96, 127, 128, 137).

As to Count VIII and Count IX, the factual averments do not change the analysis regarding discrimination on the basis of national origin or sex/sexual orientation.  Dr. Solano's accusations against McCoy are threadbare and conclusory, at best.  He neglects to plead specific facts supporting how she "served to facilitate the continued harassment" – leaving the Court to make that inference in his favor, which the Court is not inclined to do given his deficient pleading.  As to Count X, the Court draws the exact same conclusion.  Dr. Solano failed to meet the requisite elements proving a retaliation claim under Title VII, and with no change to the analysis for a PHRA retaliation claim, the Court finds that Dr. Solano does not meet his burden. The Court will dismiss Counts VIII, IX, and X.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss.  Orders of Court will follow.

Dated:  8/19/25

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE